UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PATRICK CRONIN, | : | Case No. 1:19-cv-758 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| KAIVAC, INC., | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT KAIVAC, INC.'S
MOTION TO DISMISS (Doc. 7)**

This civil case is before the Court on Defendant Kaivac, Inc.'s motion to dismiss (Doc. 7) and the parties' responsive memoranda (Docs. 11, 12). Also before the Court is Plaintiff Patrick Cronin's motion to convert Kaivac's motion to dismiss into a motion for summary judgment and for discovery (Doc. 11), to which Kaivac responded (Doc. 12).

## I. FACTS AS ALLEGED BY PLAINTIFF

In July/August 2015, Patrick Cronin and Kaivac executed a Consulting Agreement Contract (the "Agreement"). (Doc. 1 at ¶ 8–11). The Agreement provided that: (1) Cronin's term of engagement with Kaivac would be six months; (2) Cronin would receive $2,000/month for those six months; and (3) Cronin would receive 4% commission of net sales on Cronin's specific accounts, paid monthly, and for twelve months following termination of the Agreement. (*Id*. at ¶¶ 14–16).

In February 2016, the parties verbally renewed the Agreement, and the parties continued to perform under the Agreement. (*Id*. at ¶¶ 20–25). Around June 2016, the

parties began discussing a new agreement. (*Id*. at ¶ 26). A new agreement was never executed; however, the parties continued to perform per the terms of the Agreement during negotiations. (*Id*. at ¶¶ 27–31). The parties' relationship terminated on or around August 4, 2016. (*Id*. at ¶ 32).

Per the Agreement, Kaivac paid Cronin $2,000 for the month of August 2016, and continued to pay Cronin's 4% commission. (*Id*. at ¶¶ 34–35).

In May 2017, Kaivac delivered approximately 50 "Omniflex" machines to Walmart. (*Id*. at ¶ 38). Being a specific account associated with Cronin and within the 12-month post-termination period, Cronin was subsequently paid 4% commission on these orders. (*Id*. at ¶ 44). According to Cronin, Omniflex machines use lithium ion batteries, which batteries take four months to be manufactured and shipped from China. (*Id*. at ¶ 41). And, because of the cost of the batteries, the batteries are not ordered until after the Omniflex machines are ordered. (*Id*. at ¶ 42).

In September 2017, Kaivac delivered around 5,500 Omniflex machines to Walmart. (*Id*. at ¶¶ 45–46). When Cronin inquired about commissions on the machines, Kaivac claimed that Walmart had ordered the machines in September 2017, and thus they fell outside of Cronin's 12-month commission period per the Agreement. (*Id*. at ¶¶ 50–51). Cronin contends that this was false because both the ordering and delivery of machines in September is not possible, given the lithium ion batteries. (*Id*. at ¶¶ 53–56). Accordingly, Cronin states Kaivac owes him outstanding commission per the Agreement. (*Id*. at ¶ 57).

In his Complaint, Cronin asserted four claims against Kaivac: (1) breach of contract; (2) promissory estoppel; (3) unjust enrichment; and (4) failure to pay commissions pursuant to Ohio Rev. Code § 1335.11. (*See generally*, *id*.) Kaivac moved to dismiss all claims with prejudice. (Doc. 12).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,'…it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual

3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " and the Complaint shall be dismissed. *Id*. (citing Fed. R. Civ. P. 8(a) (2)).

### III. ANALYSIS

#### A. Converting to Summary Judgment

As an initial matter, the Court addresses whether Kaivac's motion should be converted to a motion for summary judgment. Kaivac attaches to its motion the affidavit of Kaivac's founder and President, Robert Robinson. (Doc. 7-1). Attached to the Robinson affidavit are six exhibits, Exhibits A through F. (Docs. 7-2–7-7).

However, even though Kaivac presents the affidavit and corresponding exhibits to its motion, in its memorandum in support, Kaivac states that the Robinson affidavit itself should not be considered by this Court, acknowledging that if considered, Kaivac's motion must be converted to one for summary judgment. (Doc. 7 at 3, fn.3). Kaivac then concedes in its reply in support that for the Court to consider Exhibits B, D, E, and F, without converting the motion to summary judgment, would be improper. (Doc. 12 at 3). Thus, Kaivac asks this Court to consider only Exhibits A and C, without the affidavit, as properly before this Court on a motion to dismiss. (*Id*.)

4

Based on Kaivac's attachments and in his response in opposition, Cronin requests that the Court: (1) convert the motion to dismiss to a motion for summary judgment, and allow him to engage in discovery before ruling; or (2) strike the motion in its entirety for failing to comply with this Court's standing order regarding motions for summary judgment. (Doc. 11). To the opposition, Cronin attaches his own declaration and exhibits, as well as his counsel's declaration establishing the discovery needed to respond to a motion for summary judgment. (Docs. 11-1–11-3).

A court evaluating a motion to dismiss is generally limited to consideration of the complaint and any exhibits attached to the complaint. *Caldwell v. PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510, 515 (S.D. Ohio 2011). Fed. R. Civ. P. 12(d) states that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

At this point in the case, the Court is disinclined to consider a motion for summary judgment, given the disputed facts argued by both parties in their pleadings and the lack of discovery completed. Accordingly, the Court finds that the evidence outside of the pleadings accompanying Kaivac's motion to dismiss and Cronin's response in opposition is inappropriate to consider when resolving the pending motion to dismiss. This leaves the Court to consider only the legal briefs submitted by the parties.

When reaching this conclusion, the Court recognizes that Kaivac contends that Exhibits A and C may be properly considered with the motion to dismiss because the

documents "are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Exhibit A is a purported email thread between the parties related to Cronin's termination. (Doc. 7-2). Exhibit C are the purported purchase orders from Walmart for Omniflex machines. (Doc. 7-4).

These documents are clearly central to Cronin's claim because the date of the Omniflex machine purchases and the date of Cronin's termination are relevant to whether Kaivac owed Cronin commission. However, despite Kaivac's contentions, these exhibits are not explicitly referred to in Cronin's complaint. Cronin references no emails between the parties in his Complaint. And, although the Walmart purchase is discussed, Cronin does not reference the specific Walmart purchase orders attached to Kaivac's motion to dismiss. Cronin could not reference these purchase orders, given that a central issue to Cronin's complaint is that he currently lacks the knowledge of when the Omniflex machines were purchased.[1] Without further evidence, the Court has no way to determine, for example, if the Walmart purchase orders reflect the entirety of all purchase orders within the relevant time frame, or whether an agreement was reached to purchase the machines before the purchase orders were created. Indeed, the timing of the Walmart purchase appears to be, at least at this time, a factual dispute, the resolution of which is inappropriate on a motion to dismiss.

---

[1] Kaivac also states that the Exhibit C documents are from, provided by, and created by non-party Walmart. (Doc. 12 at 6). Although future discovery may show the validity of these purchase orders attached, Cronin should be afforded the opportunity to conduct discovery to determine the validity of such non-party documents. Fairness requires that.

Moreover, the documents emphatically "rebut, challenge, or contradict [the allegations] in [Cronin's] complaint." *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). Exhibits A and C are selected pieces of information attached in support of the motion to dismiss Cronin's Complaint in its entirety by Kaivac. And, as Cronin acknowledges – and this Court agrees – he should be afforded a certain amount of discovery to be given a reasonable opportunity to respond to Exhibits A and C.[2]

**B.     Counts II and III**

As a second initial matter, the Court discusses Cronin's promissory estoppel and unjust enrichment claims, Counts II and III. In Cronin's response in opposition, Cronin states that "the parties have stipulated to the dismissal of Counts II and II without prejudice." (Doc. 11 and 2, fn.1). Kaivac notes in its reply that no stipulation was filed.

The Court, however, construes Cronin's request as a voluntary dismissal of Counts II and III. Pursuant to Fed. R. Civ. P. 41(a)(1), Cronin does not need Court approval or a stipulation by Kaivac to voluntarily dismiss these claims without prejudice because Kaivac has not served an answer or motion for summary judgment.[3]

Accordingly, Counts II and III are dismissed without prejudice, and the Court need only consider Kaivac's motion to dismiss Counts I and IV.

---

[2] It would also be inappropriate to consider these documents without any sort of foundation or showing of authenticity. As Kaivac admits, the Robinson affidavit cannot be considered in its motion to dismiss. The Robinson affidavit – whether correctly or not – purports to lay the foundation for Exhibits A through F.

[3] Kaivac argued at length that the motion to dismiss should not be converted to summary judgment. And this Court has already declined to convert the motion.

7

C.  **Motion to Dismiss**

Both Count I (breach of contract) and Count IV (failure to pay commissions under Ohio Rev. Code. § 1335.11) concern whether Cronin is owed commissions from Kaivac. Notably, both parties agree that Cronin's claims (and any damages owed) are solved by answering one question: When did Walmart commit to ordering from Kaivac the Omniflex machines delivered in September 2017 and after? Thus, at this stage, the Court is left to determine whether Cronin plausibly pleads that the machines were ordered within the 12-months of his termination, and he is owed commission.

Cronin plausibly pleads as such. Cronin describes the use of lithium ion batteries in the machines, the cost of ordering the batteries, the history of buying the batteries *after* an order for the Omniflex machines is placed, and the length of time it takes to receive the batteries after ordering. Cronin pleads that the Omniflex machines are delivered to Walmart with the batteries in place. And, Cronin states that thousands of Omniflex machines were delivered by Kaivac to Walmart in September 2017. Thus, Cronin plausibly pleads that, based on the circumstances, the Omniflex machines were ordered before August 4, 2017 and within the scope of his 12-month commission period.

Kaivac's arguments in support of its motion to dismiss rely mostly on Exhibits A and C, specifically that Cronin cannot prove he is owed commission based on the date of his termination and the date of the Walmart purchase orders. But, as already discussed, the Court declines to consider such evidence outside of the pleadings.

Kaivac also contends that Cronin fails to plausibly state a claim for relief because Cronin cannot know or understand the manner Kaivac completes its business, given

8

Cronin only worked as an independent contractor for Kaivac and had stopped working for Kaivac for (nearly) a year at the time of the at-issue Walmart orders. However, Cronin alleges and points to his relationship with Kaivac and his understanding of Kaivac's operations, specifically as to the Omniflex machines and ordering of lithium ion batteries. Construing these allegations in light most favorable to Cronin at this stage, Cronin has plausibly stated a claim for relief.

## IV. CONCLUSION

Based upon the foregoing, Kaivac's motion to dismiss (Doc. 7) is **DENIED**. Cronin's motion to convert the motion to dismiss to summary judgment (Doc. 11) is **DENIED**. Pursuant to Cronin's voluntary dismissal, Counts II and III are dismissed without prejudice.

**IT IS SO ORDERED.**

Date:  6/8/2021

*Timothy S. Black*
Timothy S. Black
United States District Judge